UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| FRANCIS J. LAFFEY, as Executor of the ESTATE OF KATHLEEN A. LAFFEY; ESTATE OF KATHLEEN A. LAFFEY, <br>     Plaintiffs, <br><br>     v. <br><br> ELMHHURST OPERATOR LLC, et al., <br>     Defendants. | C.A. No. 1:24-cv-00408-MSM-AEM |

## MEMORANDUM AND ORDER

Mary S. McElroy, United States District Judge.

Before the Court is the Motion to Stay and Compel Arbitration by the defendants, who include various LLCs and individuals connected to the operation of a nursing home ("Elmhurst") in Providence, Rhode Island (collectively, "Defendants"). (ECF No. 22.)  The plaintiffs, the late Kathleen A. Laffey's estate and Francis J. Laffey in his role as executor of that estate (together, "Plaintiffs"), allege wrongful death, negligence, and related claims against Defendants stemming from Ms. Laffey's death several months after her admission to Elmhurst.  (ECF No. 1-1.)  Defendants have moved to compel arbitration of Plaintiffs' claims based on an arbitration agreement purportedly signed by Ms. Laffey after her admission to Elmhurst.  (ECF No. 23-1 at 46–49.)  Plaintiffs oppose Defendants' Motion and, in the alternative, move for limited discovery on the issue of arbitrability.  (ECF No. 24.)  For the

following reasons, the Court GRANTS Plaintiffs' Cross Motion for Discovery and DENIES WITHOUT PREJUDICE Defendants' Motion to Stay and Compel Arbitration.

## I.    BACKGROUND

At issue here is an alternative dispute resolution provision (the "ADR Agreement") contained within an "Admission Agreement" apparently electronically signed by Ms. Laffey three months after her admission to Elmhurst. (ECF No. 23-1.) The ADR Agreement contains two relevant provisions, as follows:

> i.) <u>Voluntary Agreement to Mediate/Arbitrate Disputes</u>.    The undersigned parties understand and acknowledge that this is a voluntary agreement to submit any disputes, other than payment disputes, that may arise between them for resolution by mediation, and if mediation is unsuccessful, then by arbitration. The parties further understand and acknowledge that, with the exception of payment disputes, all other disputes are governed by this agreement, and each of the parties is giving up his/her/its right to resort to the courts, except to the extent that courts are empowered by law to enforce the decisions of an arbitrator who has been chosen by the parties to resolve their disputes.

> ii.) <u>Scope of ADR Agreement</u>.  Any and all claims or controversies, with the exception of payment disputes, arising out of or in any way relating to this ADR Agreement ("Agreement") or the Resident's stay at the Facility including disputes regarding interpretation of this Agreement, whether arising out of State or Federal law, whether existing or arising in the future, whether for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties . . . irrespective of the basis for the duty or of the legal theories upon which the claim is asserted, shall be submitted to ADR as described in this Agreement.

*Id.* at 46.

The ADR Agreement also contains language suggesting that arbitration is preferable to civil litigation because it is quicker and may be cheaper than trial, but

it notes that signing the ADR Agreement means a Resident is giving up their right to a trial and that arbitration provides limited avenues of appeal. *See id.* The ADR Agreement provides that signing it is "optional" and that admission to Elmhurst "is not conditional on the Resident's willingness to enter into [the] agreement." *Id.*

Ms. Laffey was 74 years old at the time she signed the Admission Agreement. She had developed the injuries (which were allegedly known to Defendants) that eventually led to her death. (ECF No. 1-1 ¶¶ 43–63.) Timestamps for each of the 49 electronic signatures on the 55-page agreement indicate that the entire agreement was executed within three minutes. *See* ECF No. 23-1. Ms. Laffey had no legal or family representative present at the time she signed the agreement, which was presented to her and signed on behalf of Elmhurst by Sharon Fusco, who was at the time an authorized agent of Elmhurst. (ECF No. 23-3 ¶ 14.) Ms. Fusco has not submitted any declaration supporting the authenticity of the Admission Agreement; instead, Defendants have submitted two sworn declarations from Kelly Gonzalez, a Regional Health Information Specialist at Elmhurst who is the Admission Agreement's custodian. *Id.* ¶¶ 1–4; ECF No. 25 at 14–17. Ms. Gonzalez does not have personal knowledge of the Admission Agreement's execution. *See* ECF No. 23-3.

Plaintiffs filed this suit in Providence Superior Court on July 9, 2024, alleging state-law claims for wrongful death, negligence and gross negligence, civil liability under R.I. Gen. Laws § 9-1-2, and breach of contract. (ECF No. 1-1.) After Defendants removed this case to this Court, the case was stayed by agreement of the parties so that they could mediate the matter. (ECF No. 23 at 3–4.) Mediation proved

unsuccessful, and Defendants subsequently filed their present Motion to Stay and Compel Arbitration. (ECF No. 22.)

## II.    LEGAL STANDARD

The First Circuit applies the summary judgment standard to evaluate motions to compel arbitration under the Federal Arbitration Act ("FAA"). *Air-Con, Inc. v. Daikin Applied Latin Am., LLC*, 21 F.4th 168, 174–75 (1st Cir. 2021) (citing 9 U.S.C. § 4). Under that standard, "the court must construe the record in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." *Id.* at 175. If the non-moving party demonstrates a genuine issue of fact about a dispute's arbitrability, the district court must proceed to an 'expeditious and summary' trial limited to disputed contract-formation questions. *Id.* (quoting 9 U.S.C. § 4). A general denial of the facts underpinning the right to arbitration is not enough; instead, the non-moving party "must identify specific evidence in the record demonstrating a material factual dispute for trial." *Soto v. State Indus. Prods., Inc.*, 642 F.3d 67, 72 n.2 (1st Cir. 2011) (quoting *Tinder v. Pinkerton Sec.*, 305 F.3d 728, 735 (7th Cir. 2002)).

"A party who attempts to compel arbitration must show that [1] a valid agreement to arbitrate exists, [2] that the movant is entitled to invoke the arbitration clause, [3] that the other party is bound by that clause, and [4] that the claim asserted comes within the clause's scope." *InterGen N.V. v. Grina*, 344 F.3d 134, 142 (1st Cir. 2003). While federal courts apply a presumption in favor of arbitration where a valid arbitration agreement exists, *Johnson Controls Sec. Sols., LLC v. Int'l. Bhd. of Elec.*

4

*Workers, Loc. 103*, 24 F.4th 87, 90 (1st Cir. 2022), "[w]hether or not a dispute is arbitrable is typically a question for judicial determination." *Dialysis Access Ctr., LLC v. RMS Lifeline, Inc.*, 638 F.3d 367, 375 (1st Cir. 2011). Therefore, "except where the parties clearly and unmistakably provide otherwise, it is the court's duty to interpret the agreement and to determine whether the parties intended to arbitrate grievances concerning a particular matter." *Id.* (quoting *Granite Rock Co. v. Int'l. Broth. of Teamsters*, 561 U.S. 287, 301 (2010)).

## III.    DISCUSSION

In their Motion to Stay and Compel Arbitration, Defendants argue that, under the Federal Arbitration Act, 9 U.S.C. § 1 *et seq.*, the Court must stay these proceedings and refer this case to an arbitrator because Ms. Laffey signed an arbitration agreement that is binding on her successors. (ECF No. 23 at 1–3.) Plaintiffs raise three substantive arguments against Defendants' Motion: first, they challenge the ADR Agreement as invalid for lack of mutual assent, unconscionability, and undue influence; second, they argue that their wrongful death claim is an independent cause of action that is not derivative of Ms. Laffey's claims and is therefore outside the scope of the ADR agreement; and third, they challenge the Admission Agreement's authenticity. (ECF No. 24-1 at 23–41.)[1]

---

[1] Plaintiffs also raise public policy arguments against the enforceability of the ADR Agreement under the circumstances alleged here. *Id.* at 41–43. Because Defendants' Motion may be resolved on other grounds, the Court need not determine whether Plaintiffs' public policy arguments can prevail against the "significant weight" afforded by courts to "the federal policy favoring arbitration and the presumption of arbitrability." *Gove v. Career Sys. Dev. Corp.*, 689 F.3d 1, 5 (1st Cir. 2012); *see Moses H. Cone Meml. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983) (describing 9

At the outset, the Court must determine whether a valid agreement to arbitrate exists. *See Henry Schein, Inc. v. Archer and White Sales, Inc.*, 586 U.S. 63, 69 (2019). The threshold issue here is whether the Admission Agreement (and, by extension, the ADR Agreement) presented by Defendants is authentic. While Plaintiffs suggest that Ms. Laffey may not have been the one who signed the Admission Agreement in a single footnote in their briefing, *see* ECF No. 24-1 at 30 n.8, they otherwise do not appear to dispute that she was the one who executed the agreement. Instead, they challenge the extent to which the Admission Agreement is self-authenticating. *Id.* at 38–41. But given both Ms. Gonzalez's declarations and Plaintiffs' apparent acknowledgment that Ms. Laffey signed the Admission Agreement, the Court finds that it has "evidence sufficient to support a finding" that the Admission Agreement is indeed what it purports to be. *See* Fed. R. Evid. 901(a); *see also Keane v. ALPS Fund Servs., Inc.*, No. 20-CV-11427-DJC, 2020 WL 7321055, at \*3 (D. Mass. Dec. 11, 2020) (finding an arbitration agreement to be authentic where the defendants proffered declarations from individuals who had personal knowledge of the records in their capacity as custodians).

Having determined that an arbitration agreement between Ms. Laffey and Defendants *exists*, the next question is whether that agreement is *valid*. But before the Court can address that question, it must first determine whether the parties have "clearly and unmistakably" delegated questions of validity to an arbitrator. Where

---

U.S.C. § 2 as "a congressional declaration of a liberal federal policy favoring arbitration agreements, notwithstanding any state substantive or procedural policies to the contrary").

an arbitration agreement contains this kind of so-called "delegation provision," a challenge to the validity of an arbitration agreement must go to an arbitrator unless that challenge is made specifically against the validity of the delegation provision itself. *See Rent-A-Ctr., W., Inc. v. Jackson*, 561 U.S. 63, 66, 72 (2010) (finding that an arbitration agreement's provision that "any dispute relating to interpretation, applicability, enforceability or formation of this Agreement including, but not limited to any claim that all or any part of this Agreement including, but not limited to any claim that all or any part of this Agreement is void and voidable" delegated the plaintiff's unconscionability argument to an arbitrator).

The clear and unmistakable standard is "demanding." *Patton v. Johnson*, 915 F.3d 827, 835 (1st Cir. 2019). A "typical, broad arbitration clause" is not enough. *Id.* at 510; *cf. Barbosa v. Midland Credit Mgt.*, Inc, 981 F.3d 82, 93 n.13 (1st Cir. 2020). Instead, the First Circuit has found delegation provisions to be clear and unmistakable when they expressly delegate issues of arbitrability *See, e.g., Bosse v. N.Y. Life Ins. Co.*, 992 F.3d 20, 29 (1st Cir. 2021) (explaining that a provision that "any dispute as to whether [a claim] is arbitrable, shall be resolved by [] arbitration" was an express delegation provision); *Awuah v. Coverall N. Am., Inc.*, 554 F.3d 7, 10–11 (1st Cir. 2009) (finding an arbitration agreement delegated threshold questions to the arbitrator because it incorporated rules authorizing the arbitrator to determine the "existence, scope or validity of the arbitration agreement").

The relevant text of the ADR Agreement provides "[a]ny and all claims or controversies . . . arising out of or in any way relating to this ADR Agreement

('Agreement') or the Resident's stay at the Facility including disputes regarding interpretation of this Agreement . . . shall be submitted to ADR." (ECF No. 23-1 at 46.) This is not a clear and unmistakable delegation provision. The broad reference to "any and all claims or controversies" is too vague to suggest that the parties intended to delegate threshold issues of arbitrability, and its requirement that disputes regarding "interpretation of this Agreement" be arbitrated is, per *Biller*, not enough.[2] The provision's subsequent reference to claims and controversies as including those "for statutory, compensatory or punitive damages and whether sounding in breach of contract, tort or breach of statutory duties," *id.*, suggests that the "claims or controversies" intended to be arbitrated encompass legal causes of action (e.g., negligence), and not disputes over issues like unconscionability.

Thus, having determined that the ADR Agreement lacks a delegation provision, the question of the validity of the ADR Agreement remains with the Court. Under 9 U.S.C. § 2, an arbitration agreement is presumed valid "save upon such ground as exist at law or in equity for the revocation of any contract or as otherwise provided in [9 U.S.C. § 4]." Under the summary judgment standard that applies to motions to compel, if the non-moving party identifies "specific evidence" demonstrating an issue of material fact as to a dispute's arbitrability, the Court must proceed to an "expeditious and summary" trial limited to disputed contract-formation

---

[2]The First Circuit in *Biller* expressly noted its skepticism of the Second Circuit's determination that "[b]road language expressing an intention to arbitrate all aspects of all disputes supports the inference of an intention to arbitrate arbitrability[.]" 961 F.3d at 510 n.7 (quoting *Metro. Life Ins. Co. v. Bucsek*, 919 F.3d 184, 191 (2d Cir. 2019)).

questions. *See* 9 U.S.C. § 4; *Air-Con,* 21 F.4th at 174–75; *Soto,* 642 F.3d at 72 n.2 (quoting *Tinder,* 305 F.3d at 735)

Plaintiffs' first two challenges to the ADR Agreement's validity—that it either lacked mutual or assent or was unconscionable—are unpersuasive. Under Rhode Island law, mutual assent is generally established by a party's signature on a document, *see Manchester v. Pereira,* 926 A.2d 1005, 1012 (R.I. 2007), and, as previously noted, Plaintiffs appear to acknowledge that Ms. Laffey signed the ADR Agreement. To challenge a contract as unconscionable under Rhode Island law, the challenger must demonstrate that the agreement is *both* procedurally unconscionable—that is, that "there is an absence of meaningful choice on the part of one of the parties"—*and* substantively unconscionable—that is, that "the challenged contract terms are unreasonably favorable to the other party." *See Britto v. Prospect Chartercare SJHSRI, LLC,* 909 F.3d 506, 515 (1st Cir. 2018) (applying Rhode Island law in determining the unconscionability of an arbitration agreement). While Plaintiffs argue at length as to the procedural unconscionability of the ADR Agreement, they make no real effort to suggest that the ADR Agreement unreasonably favors Defendants. Their unconscionability challenge must therefore fail.

Plaintiffs' third challenge to the ADR Agreement's validity—that Defendants exercised undue influence over Ms. Laffey in persuading her to sign it—has more merit. Under Rhode Island law, "[i]n determining what constitutes undue influence in a particular case, then, a trial justice ordinarily examines the totality of

9

circumstances, including the relationship between the parties, the physical and mental condition of the grantor, the opportunity and disposition of a person wielding influence, and his or her acts and declarations." *Tinney v. Tinney*, 770 A.2d 420, 438 (R.I. 2001). "Undue influence long has been recognized in equity as a defense to or a means of challenging the validity of a will, deed, or contract." *Lavoie v. N. E. Knitting, Inc.*, 918 A.2d 225, 228 (R.I. 2007).

Here, construing the facts in the light most favorable to Plaintiffs as the non-moving party, and drawing all reasonable inferences in their favor, the evidence suggests that Defendants persuaded her to sign the ADR Agreement while she was totally reliant on them for her care, after she had developed the medical conditions that led to her death, and—based on the timestamps between her signatures on the agreement—without explaining its terms to her or otherwise ensuring that she understood them. Although the ADR Agreement provides that it is optional, and although it notes that agreeing to arbitration will result in a waiver of some rights, it attempts to persuade the resident that doing so is likely to be in the resident's best interest because arbitration will "generally resolve a dispute sooner and at less cost than a trial." (ECF No. 23-1 at 46.)

Under the summary judgment standard that applies in considering a motion to compel arbitration and based on the totality of the circumstances test outlined in *Tinney*, this evidence raises enough of an issue of material fact as to entitle Plaintiffs to some discovery regarding the issues of contract formation. *Air-Con*, 21 F.4th at 175. This period of limited discovery will be followed by an "expeditious and

10

summary" trial on the issue of the ADR's Agreement's validity. *See id.* (citing 9 U.S.C. § 4).[3]

## IV.    CONCLUSION

For all these reasons, the Court finds that it must defer ruling on the merits of Defendants' Motion until any issues of material fact regarding the validity of the ADR Agreement are resolved.    Thus, the Court GRANTS Plaintiff's Cross Motion for Discovery (ECF No. 24) and DENIES WITHOUT PREJUDICE Defendants' Motion to Stay and Compel Arbitration (ECF No. 22).    Proceedings pertaining to the merits of Plaintiffs' claims are STAYED pending completion of limited discovery and a summary trial on the disputed issue of whether Ms. Laffey and Defendants entered into a valid arbitration agreement.    The period of limited discovery shall be ninety days from the date of this order.    The parties may submit supplemental briefing on the merits of Defendants' Motion to Stay and Compel Arbitration at the conclusion of the period of limited discovery.

IT IS SO ORDERED.

_____
Mary S. McElroy
United States District Judge


July 20, 2026

---

[3] Because the Court has found that an issue of material fact precludes ruling on Defendants' Motion to Stay or Compel Arbitration at this time, it need not rule at this time on Plaintiffs' contention that their wrongful death claims fall outside the scope of the ADR Agreement. *See* ECF No. 24-1 at 34–38.

11